Bryce **LUNDEEN**, Respondent,

v.

Edwin E. **LAPPI**, Respondent,

**Mutual Realty and Mortgage Company, et al.,** Appellants,

and

Edwin E. **LAPPI**, Third-Party Plaintiff

v.

George **TAGGERT**, et al., Third-Party Defendants.

Nos. C2–84–1370, C7–84–1946.

Court of Appeals of Minnesota.

Feb. 12, 1985.

Review Denied April 18, 1985.

Ralph S. Tillitt, Alexandria, for Lundeen.

John M. Giblin, Minneapolis, for Lappi.

Robert W. Kettering, Jr., Minneapolis, for Mut. Realty and Mortgage Co.

Lloyd O. Bergman, Minneapolis, for Taggert.

Heard, considered, and decided by POPO-VICH, C.J., and PARKER and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

This appeal is taken from a judgment entered May 7, 1984. The trial court concluded respondent Lundeen was entitled to elect either rescission of his contract to purchase property or an $8,000 abatement. The court also held respondent Lappi was entitled to indemnity from appellants for the abatement and for attorney's fees he incurred in defending against Lundeen's abatement action. We reverse and remand.

## FACTS

This appeal arises from the sale of lakeshore property with a year-around residence near Alexandria, Minnesota. Respondent Lappi purchased the property, sight unseen, from George and Margery Taggert on a $50,000 contract for deed. Appellants Mutual Realty and Mortgage Company (Mutual) and agent Helen Qualley agreed to act on Lappi's behalf in his attempt to sell the property in 1978. In September 1978, Lappi signed a purchase agreement to sell the property to Lundeen, an experienced real estate investor, for $55,000; $6,000 cash and $49,000 by contract for deed, calling for payments of $360 per month at 8% interest, with a balloon payment in 1983. The contract for deed was executed on October 27. Appellant Qualley was the real estate agent handling the transaction on behalf of Lappi, and appellant Mutual was Qualley's employer.

Approximately one year later, a survey disclosed that Lundeen owned less than the 100 feet of lakeshore he believed he had purchased. Lundeen sued Lappi, Mutual, and Qualley, alleging the amount of frontage was misrepresented to him. Lappi offered to rescind, but his offer was ignored because it included ambiguous language regarding monetary adjustment.

The matter was originally heard in December 1981. The trial court found agent Qualley never represented the frontage to be 100 feet and the fair market value of the property was at least $55,000.[1] The court concluded Lundeen failed to show there was a material misrepresentation or that he relied upon any alleged representation as to frontage. A judgment of dismissal with prejudice was entered on December 21, 1981.

In January 1982, Lundeen moved for amended findings, claiming mutual mistake between himself and the seller as to the actual amount of lakeshore sold. The trial court adopted this theory and issued amended findings on April 21, 1982, in which he found Lundeen and Qualley:

> were mutually mistaken as to the extent of lake frontage on said property. Defendant Helen Qualley mistakenly represented to plaintiff and plaintiff from his own investigations determined that said property included approximately 100 feet of lakeshore and included the sandy beach and steps going down to the lake from the high bank on the property. Said mutual mistake was corroborated by others involved in the sale of the property and by the renters in possession at the time of sale.

The court concluded the mistake was material and relied upon by Lundeen, but was unable to assess damages until it was determined how much frontage had actually been conveyed to Lundeen. Once the amount of frontage was determined, the court would adjust the purchase price.

Lundeen brought a quiet title action against his neighbors. The action was resolved by stipulation which left Lundeen with 60 feet of frontage.

Trial on the damage issue occurred in December 1983 before a different judge. In February 1984, he concluded Lundeen could rescind the contract or, in the alternative, elect an $8,000 abatement. If Lundeen elected abatement, Lappi was entitled

to indemnity from Qualley and Mutual for the abatement and $7,688.25 attorney's fees. Judgment was entered May 7, 1984. No hearing was afforded appellants on the claim for attorney's fees.

Appellants' notice of appeal from the judgment was filed August 1, 1984. Respondent Lappi filed a notice of review on August 7, and respondent Lundeen filed a notice of review on August 15, 1984.

By subsequent order dated August 3, 1984, after this appeal was perfected, the trial court reversed its earlier decision granting imposition of Lappi's attorney's fees against appellants.

The trial court further found Lundeen incurred $2,302 for attorney's fees in the quiet title suit and concluded Lundeen was entitled to an abatement for that amount on his contract with Lappi. In turn, Lappi was entitled to a $2,302 abatement of his contract with the Taggerts. Mutual and Qualley were not obligated to indemnify any party for that amount.

## ISSUES

1. Where the buyer and seller of lakeshore property are mutually mistaken as to the amount of lakeshore footage, and where the purchase agreement does not specify a per unit or per foot price, and where the mistake is one of good faith, is the appropriate remedy rescission of the contract or damages?

2. Is the finding of mutual mistake supported by the evidence?

3. Were attorney's fees properly awarded?

## ANALYSIS

1. Mutual, Qualley, and Lappi argue abatement is an inappropriate remedy and that rescission should have been awarded. They rely upon section 21 of the Restatement of Restitution:

---

1. The parties have not raised, and this opinion does not address, whether the trial court improperly employed the benefit-of-the-bargain

measure of damages, rather than the generally applicable measure of out-of-pocket loss.

A person who has paid money to another for land, chattels, or services, in accordance with a contract or offer which provides for a price per unit, is entitled to restitution of an overpayment caused by a mistake as to the amount or number of things transferred or the amount of services rendered, unless one of the parties is entitled to rescind the entire transaction and so elects.
Comment:

\* \* \* \* \* \*

(b) Rescission of entire transaction. If the deficiency is relatively large and the vendor has been guilty of no misrepresentation or breach of contract, he is entitled to rescind the entire transaction before performance, or after performance if the vendee demands a refund; he is not required to accept the fraction of the amount which he expected to receive for the subject matter. \* \* \* Likewise, the purchaser has an election to rescind and to recover the amount paid if the deficiency is great[.]

Restatement of Restitution, § 21.

Respondent Lundeen relies upon *Koenig v. Wachholz,* 309 N.W.2d 803 (Minn.1981), cited by the trial court as authority for its finding of mutual mistake, in support of his argument that abatement for the missing frontage is the proper remedy.

In *Koenig,* the buyers prevailed at trial on their claim for misrepresentation in the sale of farmland. On appeal, the supreme court affirmed the judgment because "the conclusion is inescapable here that there was a mutual mistake of fact as to the acreage of the transferred property." *Id.* at 804. Because the land in *Koenig* was *sold on a per acre basis,* the buyers were awarded a "proportionate restitution of the overpayment. Restatement of Restitution § 21, Comment a, Illustration 2 (1937)." *Id.* (emphasis added).

By contrast, neither the purchase agreement nor contract for deed here specified the amount of lake frontage to be conveyed. In fact, Lappi testified he did not know how much frontage he owned. Although the first trial court noted that the

purchase price for lake property is "traditionally based on lakeshore frontage," the record is devoid of any evidence which would allow the trial court or this court to conclude that the purchase price in this case was actually based on the amount of frontage.

■ While abatement is a proper remedy when the purchase is based on a price per unit, this was a sale "in gross." Since the sale of the property was "in gross" (as opposed to a "per unit" computation) and since the alleged deficiency is "large and the vendor has been guilty of no misrepresentation," Lappi (the seller) is "entitled to rescind the entire transaction \* \* \* after performance \* \* \* (and) he is not required to accept the fraction of the amount he expected to receive for the subject matter." Restatement of Restitution, § 21, Comment b.

Any remedy other than rescission would, under these facts, be unfair. It is conceded by all that the mistake was one of good faith. It would be unfair to impose an abatement award of $8,000 upon Lappi (particularly when he has been willing from the beginning to rescind the contract).

■ 2. Respondent Lappi argues the trial court's finding of mutual mistake is unsupported by the evidence. At the first trial, the court had the opportunity to hear testimony from, and evaluate the credibility of, respondent Lundeen, land developer Dennis Conn, and real estate broker Bruce Erickson, each of whom testified appellant Qualley told them the property had 100 feet of lakeshore. The court's conclusion that Lundeen and Qualley were mutually mistaken as to frontage is not clearly erroneous.

■ Respondent Lappi argues Lundeen waived his right to object to the omission of 40 feet of lakeshore because the objection was not made upon examination of the abstract. There is no evidence in the record that the actual frontage conveyed was discoverable from the abstract. In fact, the trial court ordered Lundeen to

bring a quiet title action to determine the frontage conveyed.

■ Lappi further argues that Lundeen's failure to make Lappi a party to the quiet title action constitutes waiver. Lappi cites no authority for this position. Lundeen's title is clearly derived from Lappi. In fact, Lappi urged the trial court to award no damages until the actual boundary line was established. Now that the boundary has been established, Lappi still contests damages. We find respondent Lundeen did not waive his right to object to the absence of 40 feet of lakeshore.

■ 3. The trial court ordered appellants to indemnify respondent Lappi $7,688.25 for expenses and attorney's fees incurred at trial. By order dated August 3, 1984, the trial court purported to "disallow defendant Lappi attorney's fees and costs[.]"[2] However, because appeal was perfected on August 1, 1984, the trial court lacked jurisdiction to modify the judgment and issues on appeal. *Evans v. Blesi*, 345 N.W.2d 775 (Minn.Ct.App.1984); *see also Gummow v. Gummow*, 356 N.W.2d 426 (Minn.Ct.App.1984).

■ Attorney's fees are not generally recoverable in the absence of a contract or statute. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 18 (Minn.1982). However, appellants acknowledge that recovery of attorney's fees and expenses is proper where an individual is forced into litigation as a result of the wrongful act of another. *First Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 34 (Minn.1979). Appellants argue the award is improper in this case for several reasons. First, they argue Lappi failed to file a timely notice of review permitting him to raise this issue. In fact, it is appellants who object to the award of attorney's fees in the May 7, 1984 judgment, and not Lappi.

Second, appellants argue a mutual mistake is not "a wrongful act" within the meaning of the general rule. Respondent Lundeen cites no Minnesota case in which attorney's fees were awarded for mutual mistake.

■ Third, appellants note that indemnification for attorney's fees is generally available only where defense has been tendered and refused. *Hill v. Okay Construction Co.*, 312 Minn. 324, 252 N.W.2d 107, 121 (1977). Similarly, the supreme court in *O'Connell v. Jackson*, 273 Minn. 91, 140 N.W.2d 65 (1966), upon which respondent Lappi relies, assessed attorney's fees when the party obliged to defend notified the indemnitor and called upon him to defend the action. If the indemnitor fails to defend, then he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred in such defense. *Id.* at 96, 140 N.W.2d at 69. There is no indication in the record that Lappi ever tendered the defense of this suit to appellants. We cannot sustain the award of attorney's fees or indemnification therefor.

In light of our conclusion that Lundeen is not entitled to an abatement, we need not reach the additional issues of indemnification for the abatement or the value of the frontage not conveyed.

## DECISION

The buyer is not entitled to an abatement of the purchase price and is limited to his right to rescind the contract. The trial court's finding of mutual mistake is supported by the evidence. Appellants are not liable for attorney's fees incurred by the seller in defense of the buyer's claims.

Lappi is entitled to a return of the property. We remand for the trial court to determine whether Lappi is also obligated for any substantial improvements made by Lundeen. Counsel represented to this court that work primarily in the nature of

---

2. By the same order, the trial court denied attorney's fees to Lundeen and awarded an additional $2,302 as attorney's fees for the quiet title action. This amount is to be subtracted from the balance owed by Lappi to the Taggerts.

Although the order was filed, it appears no amended judgment was entered pursuant to that order. The award of $2,302 is not involved in this appeal and will not be discussed.

maintenance was performed and that there are few major improvements. However, if improvements have increased the value of the property, Lappi must compensate Lundeen for any increase in value. The trial court shall also compare the reasonable value of Lundeen's use of the property to the payments made on the contract for deed and order compensation as appropriate.

Reversed and remanded.

Pursuant to the above decision, the temporary writ of prohibition is discharged and the case dismissed in No. C7–84–1946.