## GROUP HEALTH ASS'N v. MOOR et al.
### No. 66392.

District Court of the United States for the District of Columbia.
July 27, 1938.

Horace Russell, of Chicago, Ill., and Luke E. Keeley, A. Blaine York, and E. K. Neumann, all of Washington, D. C., for plaintiff.

Harry L. Underwood, Asst. U. S. Atty., Howard Boyd, Asst. U. S. Atty., Elwood H. Seal, Corp. Counsel, and Vernon E. West, Principal Asst. Corporation Counsel, all of Washington, D. C., for defendants.

BAILEY, Justice.

The "Healing Arts Practice Act" of 1929 provides inter alia:

"121. The healing art; definitions.—For the purpose of part 1 of this chapter the following words and phrases have the meanings assigned to them, respectively, except where the context otherwise requires:

"(a) 'Disease' means any blemish, defect, deformity, infirmity, disorder, disease, or injury of the human body or mind, and pregnancy, and the effects of any of them.

"(b) 'The healing art' means the art of detecting or attempting to detect the presence of any disease; of determining or attempting to determine the nature and state of any disease, if present; of preventing, relieving, correcting, or curing, or of attempting to prevent, relieve, correct, or cure any disease; of safeguarding or attempting to safeguard the life of any woman and infant through pregnancy and parturition; and of doing or attempting to do any of the acts enumerated above. * * *

"(c) 'To practice' means to do or attempt to do, or to hold oneself out or to allow oneself to be held out as ready to do, any act enumerated in subsection (b) of this section as constituting a part of the healing art, for a fee, gift, or reward, or in anticipation of any fee, gift, or reward, whether tangible or intangible."

"122. License required; terms of license to be observed.—No person shall practice the healing art in the District of Columbia who is not (a) licensed so to do, or (b) if exempted from licensure under sections 153 and 155 of this title, then duly registered.

"No person shall practice the healing art in the District of Columbia otherwise than in accordance with the terms of his license or of his registration, as the case may be." D.C. Code 1929, T. 20, §§ 121, 122.

The plaintiff is a non-profit corporation organized under Title 5, Chap. 5, Section 121 et seq., of the District of Columbia Code 1929, providing for corporations for "benevolent, charitable, educational, literary, musical, scientific, religious, or missionary purposes, including societies formed for mutual improvement, or for the promotion of the arts." D.C. Code 1929, T. 5, § 121.

The defendant, David A. Pine, United States District Attorney, claims that the plaintiff is illegally engaged in the practice of medicine in the District and the bill alleges that he gave notice to the plaintiff that unless such operations were immediately suspended he would file a bill for an injunction or institute legal proceedings looking to the involuntary dissolution of the plaintiff corporation.

The plaintiff is not of course practicing medicine in the sense that it is itself prescribing for the sick, and it contends that it only enters into contract with duly licensed physicians who themselves attend the members of the corporation and if necessary prescribe for them.

■ I see no reason why an individual may not without violating the statute contract with a physician for medical services for a stipulated period at fixed compensation; and it would seem that a group of individuals might make the same arrangement with a group of physicians. It would seem that this group of individuals might incorporate themselves for their own mutual benefit for the same purpose. Such a corporation, not for profit but for the mutual benefit of its members, is in my opinion not engaged in the practice of medicine or in holding itself out as doing so. It is true that a corporation can act only through its agents and employees, but the physicians with whom the plaintiff makes contracts are rather in the position of independent contractors, and the plaintiff does not in any way undertake to control the manner in which they attend or prescribe for their patients.

I find more difficulty with the question of the contract between the plaintiff and the Home Owners Loan Corporation whereby the latter agreed to pay to the plaintiff the sum of $40,000.00 in consideration of the plaintiffs' providing for two years from November 1, 1937 "substantially complete medical and hospital service to such employees of the Home Owners Loan Corporation as care to join it on a reasonable monthly payment basis." But the services to be furnished the members of Home Owners Loan Corporation are substantially the same as those furnished to the members of the plaintiff. No profit is to be made for the plaintiff or its members.

■ The question here is one of statutory construction. It is evident that the purpose of the statute was to protect the public from quacks, from the ignorant and incompetent. The actions of the plaintiff in no way tend to commercialize the practice of medicine. Its membership is limited to employees of the government in certain of the administrative branches. It is not in the business of making money by furnishing medical services to any one who may come

along. The cases cited bearing on the right to practice law are not closely analogous, they being based on the common law and governed by the courts independently of any statute.

In my opinion, therefore, the conduct of the plaintiff as set forth in the bill is not a violation of the statute.

It is contended by the defendant J. Balch Moor, Superintendent of Insurance, that the plaintiff is engaged in the business of insurance in violation of law.

The pertinent provisions of the statute, Section 179, Title 5 of the District of Columbia Code 1929 are: "Every corporation, joint-stock company, or association not exempt herein, transacting business in the District of Columbia, which collects premiums, dues, or assessments from its members or from holders of its certificates or policies, and which provides for the payment of indemnity on account of sickness or accident, or a benefit in case of death, shall be known as 'health, accident, and life insurance companies or associations.'"

This provision of the statute does not include all "insurance" companies, but only those which provide for the "payment of indemnity on account of sickness". General definitions of the word "insurance" throw little light. The statute does not include necessarily contracts "to indemnify", but is limited to those which provide for the "payment" of indemnity. The word "payment" as ordinarily used means the payment of money, and I see no reason to think that the word is used in a different sense in the statute or that it is equivalent to "indemnify".

The motions to dismiss the bill of complaint should be overruled.